Case number 19-3701 Nathaniel Ogle v. Ohio Civil Serv Empl Assoc Argument not to exceed 15 minutes per side. Mr. William Messenger, you may proceed for the appellant. Good morning, Your Honor. Good morning. And may it please the Court, my name is William Messenger. I represent the appellant Nathaniel Ogle. I'd like to reserve 4 minutes for a vote. The good faith defense recognized by the lower court, now by the 7th and 9th circuits, is not the good faith defense that this Court recognized in Duncan v. Peck, or that justices suggested in Wyatt v. Cole. This Court found in Duncan that good faith can defeat the malice and probable cause elements of claims arising from a malicious prosecution. Several years later, several justices in Wyatt agreed, with Justice Rehnquist explaining in footnote 1 of his opinion that it's actually a misnomer to even refer to it as a good faith defense, that it's merely shorthanded to say the defendant can defeat the malice and probable cause elements of a malicious prosecution case by showing that he acted in good faith. Now that defense does not help the Union here, because as the Union concedes on page 35 of its brief, malice and lack of probable cause are not elements of, or a defense to, a First Amendment-compelled speech and association claim. Now the defense the lower court recognized, and now the 7th and 9th circuits, is quite different. Those courts held, based upon equality and fairness, that relying on law that was later overturned by the Supreme Court is a defense to damages under Section 1983. And you're relying on both? I mean, there were laws that spoke on state statute, but that was, at least for 40 years, pretty wholly consistent with Supreme Court practice, so there were sort of two legs to stand on in some sense. Yes, Your Honor. The courts found the lines on both the statute and on the Supreme Court decision to hood, but that just, of course, begs the question of, what is the basis, the doctrinal basis for the notion that relying on law that was later declared unconstitutional is a defense to Section 1983? Another way to think about this is, would your client's situation today, going forward, is it exactly the same as if there weren't a hood? In other words, it seems very strange to me to think that there's no way for us to account for a hood in terms of damages. So like today, if this happened, you wouldn't have an abode defense, you'd just be straight up, wait, you can't do that, give me my money back. But in a world in which they have both the Supreme Court's precedent for 40 years, a statute, is there no way to account for that? Or it's as if a hood didn't exist? We really have to pretend a hood didn't exist when it did exist. It's as if a hood didn't exist. It's actually just as Scalia explained very well in his concurring opinion in Reynoldsville-Caskin. Reynoldsville-Caskin, of course, concerned retroactivity. And the court there discussed Harvard and explained that its constitutional decisions are retroactive, and the court rejected a reliance defense. The idea that relying on a statute that was constitutional at the time but that later was held unconstitutional is somehow a defense to, in that case, it was not a 1903 action but another action. And is it different between statutes that maybe haven't been tested, or the issue where the issue hasn't been tested, and statutes that I think are pretty much on all fours with, by the Supreme Court precedent, admittedly later changed? I would submit that there's not because, again, you just have the basic question of why is reliance on law, pre-law that was later declared illegal, a defense to Section 1983? Regardless of how strong a reliance interest that might have been, the first question is why is reliance a defense to Section 1983 at all? And I submit that it's not. And that's because of the text of 1983? Well, two reasons. The text of 1983 and also the fact that Supreme Court decisions are retroactive. If they were not retroactive, this wouldn't be an issue. But why – it's not unknown in 1983 for federal courts to read into it defenses. If you qualify immunity and absolute immunity, there's nothing on the face of the statute that suggests that. In fact, you might argue it's the opposite. And yet, that's something that courts have done for quite a long time. But immunities and defenses have a statutory basis. So in immunity, the statutory basis of that is the idea that Congress wouldn't intend to abrogate an entrenched immunity that existed prior to 1871 without saying so when it enacted Section 1983. And so that is a statutory interpretation that justifies immunity. Defenses are, of course, based upon the deprivation alleged. So different constitutional deprivations, of course, have different elements and different defenses to them. So, for example, malice and lack of probable cause are elements of a malicious prosecution claim. But the idea that relying on law that was later overturned is a defense of Section 1983 writ large has no statutory basis. And the only one that's been suggested so far is basically equity, the idea that equality and fairness justify reading this defense into Section 1983. But I submit that's untenable for at least two reasons. I mean, foremost, courts generally cannot refuse to enforce statutes because they believe it's unfair. Or in other words, courts are loathe to just make equitable exemptions to statutes based purely on equity. And that's really all this defense is based upon is the idea of equity. And secondly, I submit that it's inequitable to not enforce the statute as written because under that interpretation, it means that the victim of agency fee seizures would have to bear the loss in this case. Or in other words, it would be unfair to Mr. Ogle and the other employees whose First Amendment rights were violated to read this exception into the statute. Because as an equitable matter, the ultimate question is, who bears the loss here? Is it the union that seized the agency fees, or is it the employees that had money taken from them against their will and in violation of First Amendment rights? Would your argument work any differently in a world in which a union or someone else actually had to do this? In other words, this wasn't – don't even think of it in union terms. Just – there was a state law that said you have to collect this fee. You have no choice, private entity. You have to collect this, and you can do with it what you wish. So in other words, they're not exercising discretion. They're not reading the landscape or taking the risks here and there. They're forced to do something. And no surprise, they spend the money. In fact, maybe they're even required to spend it all every year. Would you even there not have room for an equity in terms of whether they had to find a way to disgorge all this money when it was all gone? They had to collect it. They had to spend it annually. It would be tough luck. It's retroactive. Well, the equitable case in that circumstance would, of course, be much stronger than here. I know. So that makes me think there is room for equity because that seems pretty convincing. And if there's room for equity – I have to say, I feel like they've got some pretty good equitable arguments. Janice, it's a pretty significant decision. It's pretty hurtful to their finances. You could certainly imagine a world in which it's kind of tough to force them to disgorge this going back as far as the statute of limitations goes. But equity also extends to the victims of the HNCP seizures, to the employees. And in balancing those interests, the balance I submit favors the individuals. And the court reached that conclusion in Owen v. City of Independence where it held that municipalities didn't have a good faith community. And the court's equitable reasons for so holding was that, on balance, who should bear the loss? That elemental notions of fairness dictate the one who causes the loss should bear the loss. And even if a municipality couldn't have foreseen that its actions were going to be unconstitutional, it was fairer to allocate the loss caused by its own constitutional conduct to the municipality than to the victims of the unconstitutional conduct. And the same is true here. It's fairer for the union to bear. I mean, is there any difference between a municipality, which is a public entity, and a union, which is... I mean, there's something about societal viability. I believe, too, a public entity, which is funded by all of us, and a union, which, as we know, is not funded by all of us. Well, to the extent the analogy is going to be drawn between a union and a public entity, a municipality is the closest one. And that ties into the union's second basis for the so-called good-faith defense, is that principles of equality justify the defense. That if a public entity has a defense, so should an equivalent private organization. But here, the most equivalent public organization, a municipality, lacks a good-faith community. So to the extent a union is going to be treated the same as its closest public counterpart, it should be treated like a municipality, which would not have a defense here. If someone sued a municipality for agency fees seized in the past, it would have immunity to that. It couldn't say, well, I was relying on a booth, I was relying on a state statute. It would lack an immunity under a one-versus-city of independence. So the union shouldn't be entitled to any more of an immunity than its closest public counterpart. Does that answer your question? What's your favorite case for this proposition? Our firm, Brownsville-Caskett. What's the best case in terms of there's no possibility for a good-faith defense? Brownsville-Caskett. And I think the facts of that case are actually worth discussing. And that case involved an Ohio statute of limitations statute that basically allowed for a longer statute of limitations if you sued an out-of-state defendant. The Supreme Court declared it unconstitutional in another case. And Ohio court, however, nevertheless allowed the plaintiff to move forward with her claim under the invalidated statute, her claim being filed before it was invalidated. When that case reached the Supreme Court, she argued that that was a permissible equilibrium. That she relied on the prior statute of limitations statute before it was invalidated and it was a proper remedy to allow her to rely upon that law. The Supreme Court rejected that proposition. That's not a disgorgement case, though. It's not a disgorgement case. But the basis there was reliance upon law that was made invalid. I see it as – I get it. I feel like it's doctrinally really helpful, but there is something different in kind about disgorgement. I mean, people take in money. They often spend it. Again, it's not there. But here, of course, the money was leaked with rightfully Mr. Ogle and other employees who didn't consent to pay. And so, again, going back to the original point, the core point of who bears the loss in terms of the equity here. Someone has to pay for this. It's either the union or the employees. And I submit that if the equities are balanced, if a defense can be carved into Section 1983 based upon equity, fairness and equity justifies that victims are compensated for their losses. Maybe you should argue a true equitable situation and just do the Solomon thing where one side gets half, the other side gets half. Isn't that the most equitable? It seems by definition it is. It would be an improvement over the district court's opinion. Speaking of other opinions, as I think you all are aware, there's another case pending in our court. On this issue, I just want you to have a chance to say whether there's anything about that case that's different. And even in terms of how it arose or how the legal issues have been presented. My sense is they're pretty similar, but I don't want to confirm that from your perspective. The legal argument made by the appellant, Your Honor, is very different. In that case, the appellant does not contest the existence of good-faith defense only in scope. In particular, the appellant argues that there is a good-faith defense or concedes it, but then says it doesn't apply to equity. It doesn't apply to restitution. The defense only applies to damages. And that he's actually seeking this equitable restitution. Therefore, the good-faith defense doesn't apply. That's not an argument being made here. Of course, the core argument being made here is that the good-faith defense, as recognized by the lower court and by the Seventh and Ninth Circuits, simply does not exist. It's inconsistent with the text of the statute and with equity and with Robertsville Casket. All right. Thanks so much. I appreciate it. Good morning. May it please the Court, Leigh Ann and Diane for the union. There are many reasons why there is such a long-standing, broad, and unbroken consensus among the circuit and district courts, going back 32 years to this court's case in Duncan v. Peck, and then continuing through the recent Seventh and Ninth Circuit cases that have brought to your attention, for the proposition that private parties who invoke presumptively valid state laws to seek the aid of government officials are not subject to monetary damages under Section 1983. And I'd like to begin by identifying two of the most important reasons for that unbroken consensus. And then I'll explain why, once those reasons for the defense are understood, the efforts to avoid the defense here can't work and should be rejected. Is it equitable reasons or legal reasons? Well, it's both. I get the equities. Sure. But I want to make some legal points that I think are worth responding to in terms of the legal question. Yeah, I'd like to address both. So I think the first point is that before the Supreme Court's Lugar decision in 1982, it was an open question as to whether Section 1983's undercolor state law laws even reached private parties in this circumstance where they're just following state law and asking for assistance from the state. Lugar decides that question in the affirmative, but importantly, it's critically important. And this court found it critically important in Duncan v. Peck. The dissent by Justice Powell says, boy, this could create a grave injustice. You could have private parties going about their ordinary business as private parties, following the law, invoking state statutes, and then having to pay damages for that. And Justice White, for the majority, doesn't say, well, so what? That's how the cookie crumbles. He says Justice Powell has a point. He's identified a problem. And then in footnote 23 of Lugar, the court says that's a problem that should be dealt with as a remedial issue in the nature of an affirmative defense. That is what the Supreme Court says in Lugar. This court then, just a few years later, picks up on that important part of Lugar and says that there should be a good faith defense. That's Duncan v. Peck. And, you know, one of the things about this case is the equities, it seems to me, are informed a little bit, at least in my opinion, by the fact that Janice is a close case. Abood was around for a long time. But if I flip it and I do a case where, say, you know, pre-Frontiero and that whole era up to U.S. v. Virginia, so before women get heightened scrutiny, or gender classifications get heightened scrutiny, if you had a state law before that that said we're going to tax men and women differently to account for their biological differences, whatever the justification is, and then they scrapped the prior precedent that allowed that, I think the equities would be incredibly powerful in the direction of the victims. And the victims having to pay more tax because of their gender, I just think most people would say, you've got to be kidding me. Of course they get the money back. And so doesn't the same rule have to apply in that example as it does in the Janice free speech setting? Or what am I missing? Well, there isn't a case like the one you're positing, and the court has actually said... I'm pretty confident how that will all come out. Well, in the retroactivity case... Don't you think they'd be giving, if women were forced to pay higher tax for some strange reason, they wouldn't get it back? There would be two issues. One would be the issue of the government's liability. And the Supreme Court has repeatedly stated... Everything's the same. They relied on the precedent that clearly allowed them to do it, and then it was clearly overruled. And they want the money back as far as the statute of limitations goes in 1983. So in fashioning relief for those sorts of discrimination cases, Harper itself says that one option for the state court is to, in your instance, refund that money. Another option is to raise the tax so that it was equal, or equalize it post hoc. So there's not necessarily any principle that would say that even the government... And I want to say even the government, because the private parties actually should be in a better situation vis-a-vis retrospective relief than the government, in that the norm is, of course, and this is why I started with Lugar... Let's make my case then different. Let's make it a case where private parties or unions are allowed to charge higher fees for women than men. I can make the analogy perfect. It's a brilliant private party, isn't it? I think you're going to be uncomfortable with the idea that the discriminated party doesn't get the money back. I found myself saying, why is that? Is it just because Janice was so close, and that my other example is so obviously wrong through the lens of 2020? I don't know. Well, I think we should look at the adjudicated cases, and they're very instructive here. So Lemon 2, that's, I think, a very important case if you're just talking about equity, divorce from the common law, and all this. We actually think that the common law does support this good faith defense. But I want to focus on the equities for a moment. So Lemon 2 came right after the very famous Lemon 1 case. And in Lemon 2, the issue was that some private parties, religious schools, had performed services under a commitment of public funds. In Lemon 1, the court said that dispensing those public funds violated the Establishment Clause. In Lemon 2, the issue was whether work already performed by those religious schools, which would have to go uncompensated, or whether they could receive the payment for the work they had done. And the Supreme Court, Chief Justice, I think then Justice Rehnquist, said the equities weigh in favor of allowing those payments to be made. And here, the unions argue with each other. Can you just remind me of the analysis? Is it through the lens of 1983? Is it some background? Is that how it applies to what's going on here? Lemon 2 is looking at a question of the discretion of a court in equity to apply equitable remedies. The non-construction of 1983. That case did not involve a construction of Section 1983. There's an Eighth Circuit case that we also saw that's similar. That's the Americans United case. And there, I believe that was a Section 1983 case. The Eighth Circuit held the same thing with respect to monies that for work performed by a religious organization that before the underlying program pursuant to which they performed services was found unconstitutional. So those cases, I think, are on point. And my adversary, my friend here, has not been able to find a single case where there has been a private party required to discourage monies collected and spent, and I think that's crucial. These monies were not collected and then put in a vault, as I think one of the district courts said. These monies were spent for the purposes of benefiting the class of which the claimants were a part. And we now know that in Janus the court said that these kinds of expenditures weren't allowable even though they had been under a boot. But the fact that... Let's say you're right. There's an intuition behind this that supports it. How do you deal with the point I think your accounts are making is, hey, let's look at the statute, 1983, and we get the idea that the words don't stand by themselves, that there's a common law principle in 1871, see qualified immunity or something. We'll pull that in. Can you make the same move here? I mean, is this principle you're relying on as intuitive as it seems, something that has the backing of history? It does have the backing of history, and Justice Kennedy laid that out in his concurrence in the Wyatt case. What Justice Kennedy said, and he and Justice Scalia were together on a concurrent opinion, and then Chief Justice Rehnquist was with three, two other judges for three on a dissenting opinion, that all said, and this is one of the reasons why the lower courts have been so uniform here, they're looking at five votes in Wyatt, plus a majority opinion that seems to be blessing but admittedly not specifically deciding that that analysis is correct. So Justice Kennedy says, At common law, private parties who relied on seemingly valid state statutes were not held responsible. And I think this is crucial. The argument in response is that the tort at issue had an intent component to it, and this was a way of showing that there was quite a bit of innocence in terms of any bad intent. So we don't really have that component of the case here. Well, I think we do, and I think this is a really important sort of central fallacy in my friend's submission here. The way I understand this argument is it goes like this. It starts with the premise that the procedural due process violation at issue in Wyatt was one that had a scienter or state of mind requirement. That wasn't a strict liability offense. And then my friend says, Well, the First Amendment compelled speech violation in Janus is, does not have a scienter component. It really is a strict liability offense. Therefore, it's not an apples-to-apples comparison. The fallacy is that the procedural, and we lay this out in a brief, the procedural due process claim at issue in Wyatt was not one that depended on a showing of any bad faith to establish that the underlying attachment of the property was unconstitutional. And the Supreme Court in the Connecticut v. Dorr case, which was part of the same case as the Second Circuit's Pinsky decision, which Mr. O cites with approval, the Supreme Court, when it looks at whether these attachment statutes violate procedural due process, it doesn't look at the state of mind of the body that enacted it. It doesn't look at the state of mind of the party who uses it. If it doesn't allow for proper procedures, like if it has a rubber stamp without a proper hearing, it's invalid. So there's no difference. And I think it's even instructive that Mr. Ogle, in an argument, talks about a malicious due process 1983 claim. There's no such 1983 claim for malicious prosecution. There's a 1983 claim for where the underlying constitutional violation is procedural due process. And the common law exercise that the court engages in is it says, as it looks at the underlying conduct, and it says, would this kind of conduct, if done without fault and innocently, subjected someone to liability of common law? And Justice Kendi and Chief Justice Rehnquist's analysis is that if it doesn't subject them to liability either because it was a defense or because the underlying court had an affirmative scienter element to it, then it's quite unlikely that Congress would want to perpetuate liability without fault in those cases where someone's invoking section 1983. So it didn't matter that the constitutional violation there didn't require fault. What mattered was that the private party at common law would not have been subjected to liability for following statutes and invoking government processes. So I think the common law analysis does work. And I would only say this, that if you look at qualified immunity, the notion that in the Supreme Court's qualified immunity cases they needed to look to the common law to find states that identified an immunity is incorrect. The leading case is Pearson v. Ray, one of the first qualified immunity cases. And all the court there did was it said, well, a common law, a police officer who had probable cause couldn't successfully be sued and tort because one of the elements of the false arrest or false imprisonment was a heightened state of mind. Well, we think this translates into an immunity for public officials  But there's no reason why a private defendant doesn't get the basic defense. And that's really the teaching of this court's decision in Duncan. One thing I'd like to address, I see the other. Absolutely. We're on the same wavelength. So I think the Lee case really is identical to this case. We both, both sides, asked for the cases to be heard together. And I think my friend's letter said because they present the identical issue. It is true that the counsel for the plaintiff in that case focused on a different argument. But the arguments in this case were squarely before the Lee panel. Mr. Ogle submitted an amicus brief to the Lee panel. It was before the Lee panel. We addressed it in our brief. We didn't ignore it. We addressed it at the oral argument there. So I think amicus don't really illustrate what's been preserved in our view. Yeah, I mean, I personally have not gone back and looked at those briefs. But what I'm hearing said is this whole statutory interpretation, good faith reliance point was not really pressed there. What the plaintiff conceded in that case was that this circuit has already recognized a good faith defense. And to the extent that my friend is arguing, and it's not entirely clear from the brief, the first 20 pages of the brief make arguments that if accepted at face value would actually require this court to overturn Duncan and Vector Research and two other cases. Well, I mean, it gets to this really tricky thing, which I think you know, which is what authority does a future panel have when an argument was not presented to the prior panel but its outcome is positive. So it would change the outcome of the prior panel, but the prior panel wasn't looking in that direction. And I think you'd probably agree with me that the case is all over the map on that point. Yeah, I don't believe that the – I mean, I do not believe that the basic arguments here were not before the prior panel, both because there was the amicus brief by Mr. Ogle himself. It wasn't just some random amicus brief. It was by Mr. Ogle in his own name. And again, all that was conceded was that this is a circuit that has recognized a good faith defense. There have been, as you know, a whole spate of these post-Janus cases, some of them in circuits like the Seventh that had never had occasion to look at private party good faith defense at all in any context, creditor, you name it, union. Then there were some circuits like this one that had had a chance to look at it, mostly in the creditor context, but some circuits had had cases that were outside that context as well. So in the Lee case, the plaintiff's counsel, I think, wisely conceded that there's a good faith defense in this circuit and then proceeded to make arguments that would support a ruling for the plaintiff there, even if you accept the good faith defense. So I don't want to pretend they're identical, but the issue is the same, and I think we both recognized it when we were trying to get the cases consolidated. If you look at those letters, we treated them as essentially the same case. And the Seventh Circuit did the same. I'll just finish with this. The same day Janus came down, Mooney came down, and the Janus and Mooney cases reflect the two different approaches to the plaintiff's advocacy. Thank you. Thank you, Mr. Messenger. Thank you, Your Honor. The issue and Lee in this case are the same, but the arguments being presented by the appellants are quite different, as Your Honor says. Appellants here are not requesting that this court overturn Duncan or Vector Research. As explained in the briefs and today, the good faith defense that were being used for the two ways, recognized in Duncan and in Vector Research, was simply the proposition that good faith defeats the malice and probable cause elements of Section 1983 claims analogous to malicious prosecution or abuse of process. This court's decision in Duncan was very clear on that, and the justices in Wyatt were extremely clear that what they were discussing were the malice and lack of probable cause elements that they imported into 1983 claims that were analogous to malicious prosecution and abuse of process. Let's say I do a bunch of common law research, and I still have this intuition, but I want to go see whether it's true. If I go and look at these old cases, when it comes to remedies, which include equity, equity is part of remedy, I'm going to see some cases of doctrines that say disgorgement about money that's already been spent. I'm not even really talking about retroactivity for this purpose. I'm just saying disgorgement issues money already spent. There's something different about how courts handle that. I suspect that intuition is going to be found in the common law. Are you just saying – your response to Judge Sutton? No, it's not, and your intuition is just wrong, and it's not there. It's the opposite. There's no equitable component of this. I'm not aware of it, but I think an important point here is that we're not seeking an equitable remedy. In fact, the union argues we're not seeking an equitable remedy. What we're seeking here is damages, and so there's sort of a bit of a conflict. But I mean it's still a disgorgement of something already spent. You don't think it's likely the common law dealt with that slightly differently from other settings? I'm not aware if it's true or not true. I certainly don't want to speculate here which it is, but what is being sought here is damages. And sort of one of the odd things is the union concedes we're seeking damages and not an equitable remedy, but yet wants to use equity to create an exemption to damages. So if, for example, we were seeking an equitable remedy, that would arguably open the door up to a conversation about what is in fact equitable for the union to disgorge or provide back in restitution. But we're seeking damages and action at law under Section 1983, not an action in equity. And in damages, I submit there is no equitable defense that can be created to a Section 1983 claim for damages. The statute provides that those who act under color of state law to deprive others of their constitutional rights shall be liable to the injured party in an action. And why is it just tethered to that type of tort? We have to – we can't think of it as a little more broad? Well, the relevance of torts goes to the elements of what the constitutional deprivation is. So, of course, there's lots of constitutional deprivation in Section 1983 covers. In determining what the elements are of those deprivations, sometimes courts can look to torts to determine what those elements are. For example, as this court did in Duncan. That case was basically a malicious prosecution case grounded in due process. So the court looked to a malicious prosecution tort and imported in its malice and probable cause elements. Here, a First Amendment claim under Janus has no common line at all. And there is no justification for importing in common law courts, much less malice and lack of probable cause, into a Janus claim. And that's partially because the Supreme Court has already identified the elements of a First Amendment claim under Janus. It's taking someone's money. What about a Fourth Amendment claim? If there's some validation that a private actor is working with a local officer on some scheme to detain people, the reliance of state statute, the Supreme Court seems to allow this arrangement. And the Supreme Court says, no, there's some Fourth Amendment problem with it. That private actor, bail bondsman, or someone who's been working with the state, working with a local official, relying on law. Is there a Fourth Amendment distinction that provides that private individual some good faith argument that isn't available here? Potentially, yes. Because in that case, in looking at what are the elements of a private party's Fourth Amendment violation, the court could look to common law, analogous common law, to determine what are the elements. For example, in Pearson v. Ray, the court found that malice and lack of probable cause were elements to a false arrest claim brought under 1983. The court recently addressed a similar scenario, not with a private party, but in Manuel v. City of Juliet, a 2017 decision. And the court there discussed looking to common law to determine whether a particular Fourth Amendment violation did, in fact, require malice. The court ultimately didn't decide. There, the individual was held after his hearing. So, in any case, the relevance of common law is to the elements of the claim. But here, malice and lack of probable cause were not elements to the first amendment. Thank you. Thank you. Thanks to both of you here. I appreciate it. It's a tricky case, so thank you. The case will be submitted in the first page of the report.